# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ADAM CARLONI,** | }<br>} |
| Plaintiff, | }<br>} |
| v. | } Case No.: 2:17-cv-01469-ACA<br>} |
| **BIRMINGHAM JEFFERSON COUNTY TRANSIT AUTHORITY** and **JUDY NOLAN,** | }<br>}<br>}<br>} |
| Defendants. | } |

## ORDER

This case is before the court on Defendants Birmingham Jefferson County Transit Authority ("BJCTA") and Judy Nolan's motion to dismiss Plaintiff Adam Carloni's *pro se* complaint and amended complaint. (Doc. 13).

The court entered a briefing schedule on the motion and ordered Mr. Carloni to respond to the motion on or before June 1, 2018. In response, Mr. Carloni filed a number of notices. (Docs. 17, 21, 22, 25). None of the notices specifically address the Defendants' arguments for dismissal, but the court considers the motion to dismiss ripe for adjudication because Mr. Carloni has had adequate time to prepare a substantive response.

For the reasons explained below, the Court GRANTS the Defendants' motion.

## I. STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. A complaint need not contain detailed factual allegations, but a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When resolving a motion to dismiss, the court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the

plaintiff." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 (11th Cir. 2015) (quoting *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam)). Although the court must accept well-pleaded facts as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

When, as here, a plaintiff proceeds *pro se*, the court must liberally construe the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Still, the court may not "serve as *de facto* counsel for a party, or . . . rewrite an otherwise deficient pleading" to "sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (internal quotations and citations omitted). In other words, "[o]nce a *pro se* litigant is in court, [s]he is subject to the relevant laws and rules of court, including the Federal Rules of Civil Procedure." *Smith v. Fla. Dept. of Corr.*, 369 F. App'x. 36, 38 (11th Cir. 2010) (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)).

## II. FACTUAL ALLEGATIONS

### A. Original Complaint

This case arises out of an incident that took place on June 30, 2017 at the central Max Transit station in Birmingham, Alabama. According to his original complaint, Mr. Carloni got off bus 280 at 12:24 p.m. and sat down inside the central station. Mr. Carloni had in his possession a bag from Walmart where he had purchased a pair of new shorts and a bag of potato chips. Mr. Carloni opened his phone and computer to make arrangements for where he would travel next. A lady sitting across from Mr. Carloni "triggered a fear of an erotic encounter." Mr. Carloni "felt compelled to leave," without making sure that he had all of his belongings with him. (Doc. 1-1, p. 4).

After he left the bus station, Mr. Carloni tried to buy a soda, but he realized that his wallet was missing. Mr. Carloni remembers having his wallet at Walmart. He believes that he left his wallet either on the bus or inside the bus station. (Doc. 1-1, p. 4). Mr. Carloni suspects that the woman he sat beside inside the bus station stole his wallet after he left the station. (Doc. 1-1, p. 5). Mr. Carloni paid $5.00 for the wallet, and it contained his driver's license; two debit cards; various photographs; and a Nevada EBT card. (Doc. 1-1, p. 5).

Mr. Carloni reported the stolen wallet to a BJCTA employee who did not immediately call the bus that Mr. Carloni rode. The employee asked Mr. Carloni to wait until 2:30 p.m. for the bus to return to the station so that Mr. Carloni could

ask the driver if he had seen the wallet and search the bus for the wallet. (Doc. 1-1, p. 5).

BJCTA employees, including Judy Nolan, told Mr. Carloni that there are surveillance cameras inside the bus station. According to Mr. Carloni, Ms. Nolan explained that only IT employees can access the room where the surveillance video is stored, and the IT employees would not be back at work until after July 4, 2017. Even then, if video existed, only Ms. Nolan, BJCTA security, and police officers could watch the video. (Doc. 1-1, p. 4).

Mr. Carloni returned to the bus station on July 5, 2017. He asked a BJCTA employee if he could see the video. The employee told Mr. Carloni that he would need a police report and that Ms. Nolan would be in at 7:30 a.m. the next morning. Mr. Carloni told another BJCTA employee that his wallet was stolen. That employee referred Mr. Carloni to Ms. Nolan. Mr. Carloni asked that employee if the employee would identify the cameras. The employee pointed to what Mr. Carloni believes is a smoke detector. The employee then told Mr. Carloni that BJCTA has cameras "pointed everywhere" and that there are cameras on all buses. Mr. Carloni asked a police officer at the bus station whether the police officer had access to the surveillance video. The police officer told Mr. Carloni that he (the police officer) did not have access to the video and that BJCTA hired its own private police officers. (Doc. 1-1, p. 4).

On July 5, 2017, Mr. Carloni completed a portion of a Title VI complaint form against the BJCTA. (Doc. 1-1, pp. 10-11). Mr. Carloni provided his contact information, but he did not complete the section of the form that asked him to provide details about alleged discrimination. (*See* Doc. 1-1, pp. 10-11).

B. **Amended Complaint**

In his amended complaint, Mr. Carloni complains that he was subject to indecent exposure at the bus station. (Doc. 9, p. 3). He believes that the IT staff to whom Ms. Nolan referred may not be "actual persons." (Doc. 9, p. 4). Mr. Carloni contends that before he lost his wallet on June 30, 2017, a police officer threatened to have him arrested for trespassing and asked him to leave the bus station. (Doc. 9, p. 4). The same police officer "was too loving to other people as if they were best friends." (Doc. 9, p. 5).

Mr. Carloni alleges that he "was having a hard time with the people at Walmart while [he] was in Alabama" because "they accused [him] of stealing and insist[ed] on searching [him] and they are not correct." (Doc. 9, p. 4). According to Mr. Carloni, "[p]eople were hacking into [his] computer around that time." (Doc. 9, p. 4). Now, Mr. Carloni is afraid to get on the internet because he believes that "people are going to hack in." (Doc. 9, p. 4). Mr. Carloni alleges that "people were and still are spying on [him] on his computer" which Mr. Carloni calls a "serious crime." (Doc. 9, p. 4). Mr. Carloni states that "[i]t seemed like people at

6

the bus station knew the password for [his] computer." (Doc. 9, p. 5). According to Mr. Carloni, his "wallet was stolen because someone targeted [him] because [he] has a computer." (Doc. 9, p. 5).

Mr. Carloni alleges that he "keep[s] running because it is a pattern now. People break into my things, I have to leave the city, I get picked up by another rescue mission, they break into my things, I have to leave. Eventually I am going to run out of places or tragedy is going to happen." After Mr. Carloni left Alabama, he spent four months in North Carolina where he slept outside. When he was in Alabama, he slept outside every night except for two nights because "shelters insist on going into [his] things." Mr. Carloni alleges that he has not been to a shelter that follows the Bill of Rights. (Doc. 9, p. 6).

Mr. Carloni believes that "someone is broadcasting [his] private files which contain secrets without [his] consent." Mr. Carloni suspects that "people have been passing along [his] password to other people behind [his] back exposing that which [he] wish[es] to keep private." According to Mr. Carloni, "[s]pies are getting so bad they want to know about the people who [he] lived with growing up and called family." (Doc. 9, p. 6).

Mr. Carloni believes that BJCTA employees "should have let [him] see the video if someone stole [his] wallet for [his] safety" because "now everyone knows my identity and secrets." (Doc. 9, p. 6).

## III. DISCUSSION

Based on the Defendants' refusal to allow him to view video surveillance footage from the bus station, Mr. Carloni asserts claims against the BJCTA and Ms. Nolan under Article I Section 2, Article I Section 3, Article 1 Section 4, Article 2 Section 1, Article 3 Section 1, Article 3 Section 2, Article 4 Section 2, and Article 4 Section 4 of the Constitution of the United States; the Eighth, Sixteenth, Seventeenth, Nineteenth, Twenty-Third, and Twenty-Sixth Amendments to the United States Constitution; and Article 26 of the International Covenant on Civil and Political Rights.[1]

Article 1, Section 2 of the United States Constitution states, in relevant part:

> [T]he Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.

U.S. Const. art. I, § 2.

Article 1, Section 3 of the United States Constitution states, in relevant part:

> The Senate of the United States shall be composed of two Senators from each State, chosen by the Legislature thereof, for six Years; and each Senator shall have one Vote.

U.S. Const. art. I, § 3.

Article 1, Section 4 of the United States Constitution states, in relevant part:

---

[1] Mr. Carloni's original complaint cites Article 26 of the Universal Declaration of Human Rights. (Doc. 1-1, p. 7). The language that Mr. Carloni quotes does not appear in Article 26 of the Universal Declaration of Human Rights. The language appears in Article 26 of the International Covenant on Civil and Human Rights. Therefore, the court assumes that Mr. Carloni's reference to the Universal Declaration of Human Rights is a typographical error.

The Congress shall assemble at least once in every Year, and such Meeting shall be on the first Monday in December, unless they shall by Law appoint a different Day.

U.S. Const. art. I, § 4.

Article 2, Section 1 of the United States Constitution states, in relevant part:

Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

. . .

In every Case, after the Choice of the President, the Person having the greatest Number of Votes of the Electors shall be the Vice President.

U.S. Const. art. II, § 1.

Article 3, Section 1 of the United States Constitution states, in relevant part:

The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

U.S. Const. art. III, § 1.

Article 3, Section 2 of the United States Constitution states, in relevant part:

In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction.

U.S. Const. art. III, § 2.

Article 4, Section 2 of the United States Constitution states, in relevant part:

The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

. . .

No Person held to Service or Labour in one State, under the Laws thereof, escaping into another, shall, in Consequence of any Law or Regulation therein, be discharged from such Service or Labour, but shall be delivered up on Claim of the Party to whom such Service or Labour may be due.

U.S. Const. art. IV, § 2.

Article 4, Section 4 of the United States Constitution states:

The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence.

U.S. Const. art. IV, § 4.

The Eighth Amendment to the United States Constitution states:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Sixteenth Amendment to the United States Constitution states:

The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.

U.S. Const. amend. XVI.

The Seventeenth Amendment to the United States Constitution states:

The Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years; and each Senator shall have one vote. The electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislatures.

When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: *Provided,* That the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.

This amendment shall not be so construed as to affect the election or term of any Senator chosen before it becomes valid as part of the Constitution.

U.S. Const. amend. XVII.

The Nineteenth Amendment to the United States Constitution states:

The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex.

Congress shall have power to enforce this article by appropriate legislation.

U.S. Const. amend. XIX.

The Twenty-Third Amendment to the United States Constitution states, in relevant part:

The District constituting the seat of Government of the United States shall appoint in such manner as the Congress may direct:

> A number of electors of President and Vice President equal to the whole number of Senators and Representatives in Congress to which the District would be entitled if it were a State, but in no event more than the least populous State. . . .

U.S. Const. amend. XXIII.

The Twenty-Sixth Amendment to the United States Constitution states:

> Section 1. The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.
>
> Section 2. The Congress shall have power to enforce this article by appropriate legislation.

U.S. Const. amend. XXVI.

Mr. Carloni contends that the Defendants violated his rights under these specific Constitutional articles and amendments because they would not allow him to watch video surveillance footage. As alleged, these facts do not state claims for relief. As an initial matter, Mr. Carloni has identified no Constitutional right to view video surveillance footage, and the court has located no authority conferring such a right. Moreover, the articles of the Constitution pursuant to which Mr. Carloni seeks relief govern the legislative, executive, and judicial branches of the United States government. The amendments to the Constitution pursuant to which Mr. Carloni seeks relief govern excessive bail, fines, and cruel and unusual punishment; Congress's power to levy and collect taxes; the composition of the United States Senate; women's right to vote; designation of electors for the District

of Columbia; and adult citizens' right to vote.  Mr. Carloni has not alleged facts stating plausible claims to relief under these articles and amendments because these articles and amendments do not regulate the conduct of entities like the BJCTA or its employees under the circumstances of this case.

With respect to his claim based on the International Covenant on Civil and Political Rights, the relevant portion of the covenant provides:

> All persons are equal before the law and are entitled without any discrimination to the equal protection of the law. In this respect, the law shall prohibit any discrimination and guarantee to all persons equal and effective protection against discrimination on any ground such as race, colour, sex, language, religion, political or other opinion, national or social origin, property, birth or other status.

Art. 26, International Covenant on Civil and Political Rights, Dec. 9, 1966, 999 U.N.T.S. 171 (ratified June 8, 1992).  The International Covenant on Civil and Political Rights does not assist Mr. Carloni because the document "does not create judicially-enforceable individual rights." *United States. v. Duarte-Acero*, 296 F.3d 1277, 1283 (11th Cir. 2002).  In addition, because the International Covenant on Civil and Political Rights is not self-executing and because Congress has not passed implementing legislation, the covenant "is not binding on federal courts." *Id.*  Accordingly, Mr. Carloni's complaint fails to state a claim for relief under the International Covenant on Civil and Political Rights.

## IV. CONCLUSION

For the reasons stated above, the court **GRANTS** the Defendants' motion to dismiss. (Doc. 13).

Generally, the court must give a *pro se* litigant at least one opportunity to amend his complaint before dismissing the complaint. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). Here, Mr. Carloni already filed an amended complaint, and under the circumstances, a more carefully drafted complaint would not allow Mr. Carloni to state a claim upon which relief may granted. Therefore, by separate order, the court will dismiss this case with prejudice. *See Evans v. Georgia Regional Hospital*, 850 F.3d 1248, 1254 (11th Cir. 2017) ("Although a *pro se* litigant generally should be permitted to amend her complaint, a district court need not allow amendment when it would be futile.").

**DONE** and **ORDERED** this July 13, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE